■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDRO ROMERO, Appellant.—Judgment, Supreme Court, Bronx County (Jerome Hornblass, J., at trial and *Huntley* hearing), rendered November 7, 1985, convicting defendant, after a jury trial, of criminal possession of stolen property in the first degree and sentencing him, as a second felony offender, to 2½ to 5 years' imprisonment, unanimously reversed, on the law, and a new trial ordered.

The defendant timely invoked his right to counsel and his statement to the police should have been suppressed.

Defendant's conviction for criminal possession of stolen property in the first degree (Penal Law § 165.50) is based on the following facts: At approximately 6:30 P.M. on December 7, 1984, complainant Clyde Burge arrived at Yonkers Raceway with $9,800 in cash. Most of the cash consisted of $100 bills, folded in bundles of 10 "so that the green was facing out". At

Yonkers Raceway, the complainant won $520 on a $400 bet. He collected $920, mostly in $100 bills. The complainant left Yonkers with approximately $10,393 on his person. He had $360 in his jacket pocket, $5,033 in his left pants pocket, and $5,000 in his right pants pocket. After alighting from a bus in The Bronx, complainant began to ascend the steps of the elevated subway at the Woodlawn Station and was intercepted by two men. As one blocked his way, the other pulled his arm, causing him to fall back down the steps to the street. One assailant reached into his pocket and made off with $5,000. On information obtained from bystanders, the police started to look for a blue livery station wagon. Four blocks from the crime scene, the police spotted a blue livery station wagon with three men in the back seat. When they pulled the vehicle over, codefendant Medina bolted and ran. He was captured a short time later. Defendant and a third passenger, Avila, were held, frisked and handcuffed. The police found 10 neatly folded $100 bills in defendant's pocket. Ten $100 bills were found on the car floor and four $100 bills were recovered from Medina. A total of $2,400 was recovered. At a crime scene showup, Burge failed to identify defendant, although he identified Avila and Medina.

At the 52nd Precinct, Officer Rivera read defendants Avila and Medina their *Miranda* rights, and they acknowledged their understanding of them. Of great significance to the case at bar is the following question and defendant's response: "Now that I have advised you of your rights, are you willing to answer questions without an attorney present?" Defendant answered "no". The other men made the same reply. At approximately 12:45 A.M., Officer Gallagher, aware that each suspect had declined to speak after being advised of his rights, initiated his own interviews with defendant, Avila and Medina. After advising each of his rights, Officer Gallagher elicited a statement from defendant that he had been at Yonkers Raceway that evening and had returned to The Bronx by taxi. He denied participating in the robbery and denied knowing the other two men. The other two suspects gave similar responses to questions put to them by Officer Gallagher.

Following a *Huntley* hearing, defendant's motion to suppress his inculpatory statement on the ground that. it was obtained in violation of his right to counsel was denied. The trial court determined that declining to answer a question without an attorney present did not constitute a request for an attorney.

It is well settled that when a defendant answers "no" to the question of whether he is willing to speak to law enforcement officials without an attorney present, he thereby invokes the right to counsel. *(People v Carmine A.,* 53 NY2d 816 [1981]; *People v Dean,* 47 NY2d 967 [1979]; *People v Gamble,* 129 AD2d 470 [1st Dept 1987].) In each of the cases cited, a conviction was reversed because of questioning by police officials sometime after the defendant had refused to answer questions in the absence of an attorney. Thus, the trial court erred in failing to suppress defendant's statement to Officer Gallagher and the judgment is reversed. The case is remanded for a new trial from which the statement is excluded. Concur —Ross, J. P., Carro, Asch, Kassal and Smith, JJ.